THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF MARYLAND

DR. ROSE C. MERCHANT    :

          :

 v.         :  Civil Action No. DKC 09-0256

PRINCE GEORGE'S COUNTY,  :
ET AL.
          :

**MEMORANDUM OPINION**

  Two motions are presently pending and ready for resolution in this employment discrimination and retaliation case. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.

  For the reasons that follow, the motion to dismiss, or in the alternative for summary judgment, submitted by the individual Defendants will be granted (Paper 6). The motion to dismiss or in the alternative for summary judgment, submitted by Defendant Prince George's County will be granted (Paper 7). Both motions will be construed as motions for summary judgment.

**I. Background**

  Plaintiff Dr. Rose C. Merchant was hired by the Prince George's County Department of Corrections ("Department") on July 18, 2005 as a G35 Deputy Director. (Paper 1 ¶16). Her annual salary at the time of her hire was $92,000.00. (*Id.*)

Each year, Plaintiff was evaluated by her immediate supervisor. During the period from August 2005 – August 2006, her supervisor (and Defendant) Barry Stanton rated her performance as "exceeds satisfactorily" and recommended a 3.5% merit increase, which was granted. (Paper 1 ¶ 18). During the period of August 2006 to August 2007, her supervisor (and Defendant) Alfred McMurray also rated her performance as "exceeds satisfactorily" and recommended a 3.5% merit increase in salary, which was granted. (Paper 1 ¶ 19). She also received two cost-of-living salary increases at 2.5% of base salary. (Paper 1 ¶ 20).

Plaintiff received other salary increases during her time at the Department. On April 20, 2006, Barry Stanton submitted a salary increase to the Prince George's County Executive Director of Human Resources Management Donald Bridgeman ("Director of Human Resources") for all Deputy Directors, which was approved. (Paper 16, at 10-11). On August 8, 2006 Plaintiff received a salary increase from $92,000 to $97,600.62. (Paper 16, at 11). On February 22, 2007, Plaintiff's supervisor Alfred McMurray submitted a request for a wage increase to Dr. Jacqueline Brown and it was approved. (Paper 16, at 11). Plaintiff's salary was then increased from $100,040.72 to $101.016.76. (*Id.*).

Plaintiff's salary totals for her years at the Department were as follows. In 2005, her salary was $92,000. In 2006, her

salary was $97,601.  In 2007, her salary was $103,542.  In 2008, at the time of her discharge, her salary was $103,542.  (Paper 1 ¶23).

Plaintiff offers information on the salaries of four of her male colleagues at the Department, which County Defendant supplements with further details.  (1) Alfred McMurray ("McMurray"), employed as an appointed G35 Deputy Director during 2005-2007 made $115,000 during the relevant time period. (Paper 1 ¶¶ 24-25).  (2) Gregory Harris ("Harris") was employed as an Acting Deputy Director in 2007, and he was then appointed to a G35 Deputy Director position.  He received $130,000 as a salary during the relevant time period. (Paper 1 ¶¶2 6-27).  (3) William Johnson ("Johnson") was employed as a G35 Deputy Director, and received a salary of $129,784.  (Paper 1 ¶¶ 28-29).  (4)  William Frazier ("Frazier") was employed as a G35 Deputy Director and received a salary of $130,000.

Plaintiff states that she made four salary requests that were ignored by the Director of Human Resources.  These requests were submitted in December 2005, January 2007, February 2007 and January 2008.  (Paper 1 ¶¶ 34-36).  Plaintiff maintains that each request was made pursuant to County Policy and that each one was denied.  (Paper 1 ¶¶ 34-36).

Plaintiff was discharged in February 2008 without cause or explanation.  (Paper 1 ¶ 44).  Her job status was an exempt

employee (or at will) and so she could be terminated at any time, for cause or for no cause. (Paper 16, at 14).

Plaintiff filed a complaint on February 4, 2009 against Prince George's County, as well as a series of individuals, including Jack Johnson, Donald Bridgman, Barry Stanton and Alfred McMurray. (Paper 1). Defendants' motions to dismiss were filed separately. The individual Defendants filed a motion to dismiss on June 17, 2009 (Paper 6) and the County Defendant filed a motion to dismiss on June 18, 2009 (Paper 7). Both motions to dismiss were titled as "Motion to Dismiss and/or Summary Judgment" and Defendants attached numerous exhibits containing affidavits, Plaintiff's personnel file and tables of salaries for various employees at the Department. Plaintiff's responses were filed on July 13, 2009, and included her Equal Employment Opportunity Commission ("EEOC") complaint as an attachment. (Papers 12 and 13). Individual Defendants and County Defendant filed replies on July 24, 2009. (Papers 14 and 15). After examining the pleadings and evidence submitted, the court is ready to rule.

**II. Standard of Review**

Defendants have moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. When "matters outside the pleading are presented to and not

excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b).  *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998)(Stating that "[a] cursory glance at the Federal Rules of Civil Procedure. . . makes clear that the motion before the court could be treated as a motion for summary judgment.")  Here, Defendants have appended multiple documents to their motions, including Plaintiff's EEOC charge of discrimination and the notice of right to sue issued by the EEOC, as well as several affidavits.  Plaintiff has also attached her EEOC charge.  She raises no objection to the inclusion of these documents, though she does object to handling this motion as one for summary judgment, and asks the court to disregard the evidence from Defendants and treat the motion as one to dismiss.  Generally, where the parties present matters outside of the pleadings and the court considers those matters, the court will treat the motion as one for summary judgment. *See Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P 56(f); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**III. Analysis**

Defendants contend that they are entitled to summary judgment because Plaintiff cannot establish that a genuine issue of material fact exists to support her claims of sex discrimination, and because she cannot establish a *prima facie* case of retaliation. Defendants argue that even though Plaintiff establishes *a prima facie* case for sex discrimination, the evidence demonstrates that the alternate employees to whom Plaintiff compares herself had greater wages because of legitimate, nondiscriminatory reasons.

Plaintiff argues that she properly alleges a claim of retaliation, and that she was terminated as a result of her complaints of discrimination.  With regard to her Title VII sex discrimination and Equal Pay Act claims, she offers the facts in her complaint as a *prima facie* case, and maintains that she has not offered rebuttal evidence to the evidence proffered by Defendants because she has not had the opportunity to conduct discovery.  She argues that the court should consider the

motions under at 12(b)(6) standard, and not look beyond Plaintiff's complaint.

### A.   Title VII Claim and Equal Pay Act

Initially, Individual Defendants moved to dismiss the Title VII claims that Plaintiff filed against them because individual supervisors are not liable under Title VII under the statute.[1] In her opposition to the motion to dismiss, Plaintiff herself dismisses "all Title VII claims against [the individual Defendants] in Counts I and III of her Complaint."  (Paper 13, at 3).  Thus, the only pending Title VII sex discrimination claim is against Defendant Prince George's County.  The Equal Pay Act claim remains against all Defendants.

Plaintiff claims that she was subject to sex discrimination in violation of Title VII, 42 U.S.C. § 1981 and the Equal Pay Act, 29 U.S.C. § 206(d).  She claims that she was compensated less than her male peers for performing the same job, because of her sex.

Before a plaintiff may file suit under Title VII, she is required to file a charge of discrimination with the EEOC.  *See*

---

[1] The statute defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such person."  42 U.S.C. § 2000e-2(a).  The Fourth Circuit has interpreted "employer" as defined by the Age Discrimination in Employment Act, which is similar in nature, to find that the term "agent" did not signal a congressional desire to impose liability on individual supervisors.  *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994).

*Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009); and 42 U.S.C. § 2000e-5(b). Plaintiff has met this requirement.[2] She has attached her EEOC and Maryland Human Relations Commission complaint to Papers 12 and 13. The full EEOC file is attachment 4 to Paper 15. The complaint was filed on October 20, 2008. Plaintiff did not allege retaliation in her EEOC charge, though she had been discharged at the time of its filing. The EEOC ruled that it could not find the existence of discrimination based on race or gender regarding salary differentials. The EEOC issued a Dismissal and Notice of Rights on November 4, 2008. (Paper 15, Attachment 4, at 7). Plaintiff subsequently filed her complaint in this court. (Paper 1).

Title VII and the Equal Pay Act can be construed harmoniously, though there are some differences between the statutes. *Reece v. Martin Marietta Technologies, Inc.*, 914 F.Supp.1236, 1240 (D.Md. 1995). For instance, unlike the Equal Pay Act, Title VII requires a showing of discriminatory intent by direct or indirect evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

---

[2] In its motion to dismiss, County Defendant moved to dismiss for failure to exhaust administrative remedies because Plaintiff had not attached her EEOC complaint, or included the number assigned to her Charge of Determination. (Paper 7, at 4). Because she subsequently attached the file and included her number, his issue is now moot.

To satisfy the Equal Pay Act, Plaintiff must establish a *prima facie* case by showing that "(1) her employer [paid] her a lower wage than a male counterpart (2) for equal work on jobs the performance of which requires equal skill, effort and responsibility." *Reece*, 914 F.Supp.1236 at 1240(quoting *Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 161 (4th Cir. 1992)). When comparing wage rates by gender, the "comparison must be made factor by factor with [a particular] male comparator." *Id.*(quoting *Strag v. Board of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995)).

To establish a *prima facie* case under Title VII, Plaintiff must show that (1) she is a member of a protected class; (2) she was paid less than an employee outside the class; (3) and the higher paid employee was performing a substantially similar job. *Kess v. Municipal Employees Credit Union of Baltimore*, 319 F. Supp. 2d 637, 644 (D.Md.2004).

It is undisputed that Plaintiff is a woman, and gender is a protected class. Therefore, the initial analysis under Title VII and under the Equal Pay Act is largely the same. Establishing equal work (prong two of the Equal Pay Act inquiry and prong three of the Title VII inquiry) requires proof that the work performed by "a female employee is 'substantially equal' to the work performed by the higher paid male." *Reece*, 914 F.Supp.1236 at 1240.

As noted above, Plaintiff has offered several examples of men in her division who are paid higher wages as comparators. Plaintiff offers the examples of Frazier, Harris, McMurray and Johnson to make her case. Each of these men, she argues, was paid more than she was for having substantially the same responsibilities and job. They were all G35 Deputy Directors at the Department, and yet her salary was lower than each of their salaries. (Paper 1 ¶¶ 26-31). Plaintiff states that at the Department she performed duties requiring the same skill, effort and responsibility as her male counterparts, and that the difference in pay was not the result of seniority, merit or a piecework system, but rather a continuing effect of discrimination. (Paper 12, at 7). These allegations constitute a *prima facie* case.

Because Plaintiff has established a *prima facie* case of salary discrimination against Defendants, the burden shifts to Defendants to prove that the pay differential is justified by the existence of one of the four statutory exceptions set forth in § 206(d)(1): (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. *Reece*, 914 F. Supp. at 1241; *Strag*, 55 F.3d at 948. If the employer is unable to meet the burden of proving a defense, then

the employer is liable for sexual discrimination in pay. *Reece*, 914 F. Supp. at 1241(citing Strag, 55 F.3d at 948).

Defendants have responded with legitimate, non-discriminatory reasons for the salary disparities laid out in the pleadings and supported by affidavit. One employee, Frazier, did not occupy the same position or have the same responsibilities as Plaintiff and so he is not eligible to be a "male comparator."[3]

The other three comparables offered by Plaintiff all had significantly longer length of service with the County or in corrections generally. Harris was hired on June 1, 1982 and retired on August 2007. (Paper 7, at 9). Upon retirement his salary was $111,228. He was rehired on March 10, 2008 with a starting salary of $90,000. (*Id.*). He had 25 years of experience in corrections when he started, and his initial salary upon rehire was lower than Plaintiff's. (*Id.*).

McMurray was hired by the County on June 28, 1982. (*Id.*). He was appointed to be a Deputy Director on April 6, 2003, with

---

[3] According to an affidavit signed by an administrator in the human resources office of Prince George's County, Frazier was a Grade 31 Administrative Specialist and not a Deputy Director. He was hired on September 25, 1972 with a starting salary of $31,469. His current salary is $125,182.20. This salary is based on the length of time that he has been employed by the Department. Furthermore, Frazier did not perform he same type of work as Plaintiff.

a salary of $94,890.90. His salary was only slightly higher than Plaintiff's when he started, and he had over twenty years of experience in corrections, while Plaintiff had none. (*Id.*).

Johnson was hired by the Department on January 22, 1999. (*Id.* at 10). He was appointed to be a Deputy Director on December 9, 2007. His salary upon appointment to the position was $129,798.01. (*Id.*). Prior to the appointment he had 27 years of service within the Department. (*Id.*).

It is clear from the pleadings and the evidence presented that the three male comparators, while having similar duties and responsibilities to Plaintiff, had vastly more experience than she did, both in the world of corrections and within the Department itself. "The broad scope of the fourth statutory exception" – which allows a differential based on any factor other than sex – includes "differences based on experience, training, or ability." *Reece*, 914 F. Supp. at 1241. Defendants have shown that the differences in pay were due to vastly different years of experience, and amount of time with the county. Indeed, even in the several years that she was there, Plaintiff's salary rose dramatically.

Because Defendants have offered a nondiscriminatory reason, the inquiry under the Equal Pay Act ends. Under Title VII, however, when the employer successfully articulates a non-discriminatory reason for the salary differential, "the female

employee has the burden to establish that the employer's nondiscriminatory reason is a pretext for discrimination. *Reece*, 914 F. Supp. at 1241.  Here, Plaintiff has failed to establish that the non-discriminatory explanations are "unworthy of credence." *Kess*, 319 F. Supp 2d at 645.

In her Response, Plaintiff states that she "would normally offer rebuttal evidence" that Defendants' "proffered reason for disparity in pay is pretextual," but she cannot because she has not had the opportunity to conduct any discovery.  In her response she does not attempt to propose what type of discovery she would conduct (for instance, whether she would conduct depositions, and if so, of whom), and what information she would hope to gain through her discovery.  Federal Rule of Civil Procedure 15(f) allows parties who oppose a motion for summary judgment to show that they cannot present facts essential to their opposition, by filing an affidavit.  Plaintiff has also failed to take advantage of this rule and has offered no affidavits.  Furthermore, it is unclear what evidence Plaintiff would find that has not been proffered already by Defendants. They have provided part of Plaintiff's employee file from Prince George's County; information from the County's human resources files; a table of employees and their salaries; and an affidavit from Linda Tetlow, an employee of the human resources department for over twenty-seven years, and custodian of records fro all

county personnel files.  (Paper 7 Attachment).  Plaintiff has therefore failed to rebut the reasons offered by her employer for the differences in pay.

### B.     Retaliation Claim

Title VII prohibits an employer from retaliating against an employee who exercises her Title VII rights.  See 42 U.S.C. § 2000e-3.  Plaintiff alleges that she complained of discrimination in pay during her employment with Defendant, and that she filed a charge of discrimination with the EEOC. Plaintiff maintains that the fact that she was terminated without cause "despite receiving outstanding performance evaluations sets forth a causal link." (Paper 12, at 8).

Plaintiff did not allege retaliation as a claim in her charge with the EEOC, filed on October 20, 2008.  The Fourth Circuit has held that "[w]here . . . claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999).  However, the Fourth Circuit has also allowed claims of retaliation to proceed when they were not initially filed with the EEOC, especially when the retaliation was the result of a previous EEOC filing.  In *Nealon v. Stone*, the Fourth Circuit held that "a plaintiff may raise the retaliation claim for the first time in federal court. . . .

15

We believe that rule is the inevitable corollary of our generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." 958 F.2d 584, 590 (4th Cir. 1992)(internal quotations omitted). Therefore, this court does not dismiss the retaliation claim for failure to exhaust administrative remedies, but rather analyzes the claim under the summary judgment standard.

To establish a claim of retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). "Plaintiff's burden to establish a *prima facie* case is 'not onerous' and only requires that a plaintiff prove each element by a preponderance of the evidence." *Davis,* 639 F.Supp.2d at 617(citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If Plaintiff can make such a showing, the burden then shifts to the employer to offer a non-discriminatory basis for the adverse employment action. *Matvia v. Bald Head Island*, 259 F.3d 261, 271

(4th Cir. 2001). "The employee then has the opportunity to prove that the asserted reason is pretextual." *Davis,* 639 F.Supp.2d at 617(citing *Matvia*, 259 F.3d at 271)(S*ee also Smith*, 202 F.3d at 248 ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII.")).

It is undisputed that Plaintiff suffered an adverse employment action and therefore satisfies the second requirement of the *prima facie* case: she was discharged. *See Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) (noting that termination is an adverse employment action). To survive summary judgment, therefore, Plaintiff must show that she was engaged in a protected activity and that there was a causal link between that activity and her termination.

To establish that she was engaged in a protected activity, she must show that the activity was either an "opposition" or "participation." *Davis,* 639 F.Supp.2d at 617. In other words, the protected activity must either oppose a practice prohibited under Title VII (pursuant to the opposition clause); or make a charge, testify, assist, or participate in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). *Rachel-Smith v. FTDATA, Inc.*, 247 F.Supp.2d 734, 747 (D.Md. 2003). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to

bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. *Id.; see also* 42 U.S.C. § 2000e-3(a).

Plaintiff claims two protected activities. One, that she filed complaints with the County Defendant while she was employed, and two, that she filed a charge of discrimination with the EEOC. She also says that the fact that she was terminated without cause, despite outstanding performance evaluations sets forth a causal link and satisfies the final requirement.

Plaintiff misunderstands the requirement for finding a "causal connection." To find a causal connection, "the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." *Dowe v. Total Action against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Therefore, the firing must have occurred because of one of her two alleged protected activities.

Plaintiff's filing of an EEOC claim does constitute a protected activity. *See Ashe v. Giant of Maryland LLC*, 2007 U.S. Dist. LEXIS 99026 at *17 (D.Md. 2007). No causal

18

connection between this filing and her termination exists, however, because she was terminated from employment on February 21, 2008 and did not file her EEOC claim until October 20, 2008. Clearly Plaintiff was not terminated because she filed an EEOC claim as she did not file the claim until months after her termination. Plaintiff's claim that she complained of sex discrimination in pay is also inadequate. She offers no evidence and no details as to what she said, when she said it or to whom she complained. Plaintiff therefore fails to meet the standard required to overcome a motion for summary judgment on her retaliation claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss, construed as motions for summary judgment, will be granted. A separate Order will follow.

                                          /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge